[Cite as *State v. Kennedy*, 2018-Ohio-4172.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 8-18-01

    v.

ROSALIE N. KENNEDY,                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR17-03-0075

**Judgment Affirmed**

Date of Decision: October 15, 2018

APPEARANCES:

    *John P. Parker* for Appellant

    *Alice Robinson-Bond* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Rosalie Kennedy ("Kennedy"), brings this appeal from the December 21, 2017, judgment of the Logan County Common Pleas Court sentencing her to 15 years to life in prison, plus three consecutive years for a firearm specification, after a jury convicted Kennedy of Murder in violation of R.C. 2903.02(A), an unclassified felony. On appeal, Kennedy argues that there was insufficient evidence presented to convict her, that her conviction was against the manifest weight of the evidence, that her trial counsel was ineffective for failing to seek suppression of statements she made in a police cruiser and statements she made in a later interview, that the trial court committed plain error by permitting Kennedy's police interview into evidence, that the trial court erred by declining to instruct the jury on "Negligent Homicide," and that the trial court erred by redacting a statement Kennedy made in her police interview that she would be willing to take a polygraph test.

*Procedural History*

{¶2} On March 10, 2017, Kennedy called 911 from her landline phone at 8100 Township Road 110 in Rushsylvania, Ohio, indicating that her husband Gary had been shot, and that she shot him after he pointed a gun at her. Police and medical personnel responded to the scene, but Gary was dead. Kennedy was placed in the back of a cruiser at the scene where she was recorded talking to herself, saying such

things as "I didn't kill Gary" and "I've never been in trouble." She was also interviewed by police later, but at that time she denied knowing what happened to Gary, indicating that she was sleeping and when she awakened he was on the floor in the kitchen, bleeding.

{¶3} On March 14, 2017, Kennedy was indicted for Murder in violation of R.C. 2903.02(A), an unclassified felony, with a firearm specification pursuant to R.C. 2941.145(A), and Felonious Assault in violation of R.C. 2903.11(A), a second degree felony, with an accompanying firearm specification pursuant to R.C. 2941.145(A). Kennedy plead not guilty to the charges.

{¶4} Her case proceeded to a jury trial and Kennedy was found guilty of the charges and specifications. Following the trial, Kennedy filed a lengthy motion for acquittal, or alternatively, for a new trial. Her motion was denied.

{¶5} Kennedy was sentenced on December 21, 2017. At sentencing Kennedy argued that her Murder and Felonious Assault convictions should merge. The State did not oppose this argument, and the trial court found that the convictions should merge for sentencing. The State elected to proceed to sentence Kennedy on the Murder charge and specification. After hearing the statements of the parties, wherein Kennedy maintained her innocence, the trial court sentenced Kennedy to 15 years to life in prison on the murder conviction, and a consecutive 3 year prison term on the firearm specification.

{¶6} It is from this judgment that Kennedy appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Counsel was ineffective under the Sixth and Fourteenth Amendments of the U.S. Constitution in failing to file a Motion to Suppress the statement made to Det. Watson obtained in violation of the Fifth Amendment.**

**Assignment of Error No. 2**
**It was plain error under Crim.R. 52 to admit Mrs. Kennedy's videotaped statement as it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 469 (1966), even though the issue was not raised by defense counsel.**

**Assignment of Error No. 3**
**Defense counsel's failure to challenge the admission of the statements made by Mrs. Kennedy in the Sheriff's car and secretly recorded violated her right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution.**

**Assignment of Error No. 4**
**The trial court erred in failing to instruct the jury on Negligent Homicide and denied appellant a complete defense under the Sixth and Fourteenth Amendments of U.S. Constitution.**

**Assignment of Error No. 5**
**The trial court should have allowed into evidence the appellant's offer to take a polygraph so that she could present a complete defense under the Sixth and Fourteenth Amendments of the federal Constitution.**

**Assignment of Error No. 6**
**There was insufficient evidence that Mrs. Kennedy purposely killed her husband.**

**Assignment of Error No. 7**
**The conviction for Murder was against the manifest weight of the**
**evidence.**

{¶7} We elect to address some of the assignments of error together, and out of the order in which they were raised.

*Sixth and Seventh Assignments of Error*

{¶8} In Kennedy's sixth assignment of error she argues that there was insufficient evidence presented to convict her of Murder. In her seventh assignment of error she argues that her conviction for Murder was against the manifest weight of the evidence.

Standard of Review

{¶9} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶10} By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines

the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. *Thompkins* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

{¶11} On appeal, Kennedy challenges her conviction for Murder in violation of R.C. 2903.02(A), which reads, "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."

Evidence Presented

{¶12} On March 10, 2017, at approximately 10:30 p.m., Kennedy called 911. When asked what the emergency was she stated, "Please. 8100 Township Road 110. My husband. I don't know what happened. We had a fight, but I don't know what happened. Please, come." (Tr. at 172). When the dispatcher asked what was wrong with her husband Kennedy said, "He looks like he's been shot." (*Id.* at 173). The dispatcher pressed Kennedy as to why she thought her husband had been shot, and Kennedy said, "Because he pulled out a gun and he turned it on me and I shot

him." (*Id.* at 175). Kennedy clarified that she shot her husband, Gary, with a .22. (Tr. at 175). Kennedy stated she did not know where the gun was at that time. She said her husband was "gone," but then begged for help.

{¶13} Kennedy repeatedly requested assistance from the dispatcher, and from God, and she called her husband's name throughout the duration of the call, which lasted nearly 15 minutes before police arrived. Kennedy could be heard calling her husband's name and telling him to "[g]et up," stating that he "can't go." (Tr. at 177-178).

{¶14} The dispatcher tried to engage Kennedy in conversation to get further information, but Kennedy mostly addressed Gary. Kennedy stated such things as, "* * * I'll always be true to you. I will always be true to you. * * * I will not cheat on you ever. I swear to God, I won't ever. * * * You are the love of my life. We don't have sex, but that's no big deal. * * * Please, help Gary." (Tr. at 181-82). Kennedy also stated, "I would not hurt you. That's crazy. I would not hurt you at all. Ever. Ever. * * * God, I would not hurt you. Here come the cops. Okay. Okay. There they are." (*Id*. at 182).

{¶15} Deputies from the Logan County Sheriff's Office responded to the residence, observing Kennedy in the kitchen upon their arrival. Kennedy was escorted out of the residence and into the back of a police cruiser by one officer while another officer went inside and found Gary on the floor of the kitchen, covered

in blood from a gunshot wound in his chest. EMTs could not revive Gary at the scene.

{¶16} The scene was investigated and deputies located a .22 revolver partly covered in coffee grounds on the kitchen counter. There were coffee grounds on the kitchen floor and on the wall as well. The revolver was cocked and ready to fire another shot. Blood was located in the sink. It was tested and found to be consistent with Gary's. The parties stipulated that Kennedy washed her hands in the sink, but they did not stipulate as to when that took place.

{¶17} Aside from the bullet that struck Gary in the chest, a BCI investigator noted two other ballistic incidents at the scene. One bullet had gone out the kitchen window and struck the garage outside, while another appeared to have grazed Gary's back and then struck a television in the kitchen. Three shots were fired out of the .22 revolver, and there were six bullets remaining in it.[1] The investigator indicated that the shots had all come from the same general area, the north end of the kitchen. (Tr. at 358).

{¶18} Several other weapons were located at the residence, including one that used .22 ammunition, but it was in the bedroom. There was also a 9mm in the bedroom that had a loaded magazine but no cartridge in the chamber.

---

[1] The investigator also noted a drink by the bed in the bedroom and the bed was wet as though something had been thrown onto its inhabitant.

{¶19} While officers and EMTs were dealing with Gary and the scene of the incident, Kennedy was in the backseat of a police cruiser. Her audio was recorded during that time, and she could be heard talking to herself, though no officers were with her for the majority of the time she was in the vehicle. The audio recording was introduced into evidence wherein Kennedy said things to herself like, "Gary why did you do this?" (Tr. at 282). And "Goddamnit, I didn't kill him. I loved him. Jesus Christ. Oh. I want out of here. I did not do this to Gary, Goddamnit. God, I'm – Gary, you fucking shit. You did this to me. Goddamnit, you did this. You like it, you bitch. You like it. Goddamnit. You like it. Fucking jerk. So why did they come out? Why did they come out? I didn't call them. Gary didn't call them. No, no. Please somebody help me." (*Id.* at 284). Kennedy also said things such as she had never done anything wrong before, that Gary wanted to die, and that she had never been in trouble. She talked to herself for approximately an hour before she was transported to the jail. At one point she realized that the cruiser's door was unlocked and she got out and walked around the residence until she was escorted back to the cruiser by an officer.

{¶20} As Kennedy was being transported to the jail, she began to get violent, stating that she did not believe the police officers were actually officers. "You're fucking me over and I know it," she said. (Tr. at 311). She began to strike the windows with her feet. She struck the plexiglass divider with her head. She tried

to get out of the moving vehicle. Officers had to pull over four times on the way to the jail to get her to calm down, to attach handcuffs to her, and one officer actually had to sit in the back with her. Officers indicated that Kennedy appeared to be very intoxicated.

{¶21} Kennedy was interviewed at the jail several hours after the incident to allow alcohol to leave her system. During the interview Kennedy indicated that both she and Gary were drinking that night, and that she had a good evening with Gary until she saw him looking at pornography on his tablet. Kennedy indicated that Gary had been forced to retire due to looking at pornography at work so it irritated her. Kennedy indicated that she then went to bed and when she woke up, she went into the kitchen and Gary was on the ground with blood coming out of his mouth. Kennedy indicated she did not know what happened to Gary.

{¶22} As for Gary, his body was examined by the Montgomery County Coroner's Office. The autopsy revealed that Gary received a gunshot wound in his upper right chest. The bullet went through the trachea and the ascending thoracic aorta, the largest artery in the body. It then went through the descending thoracic aorta, through the left lower lobe of the lung. The bullet lodged in the left chest cavity. (Tr. at 447). The forensic pathologist indicated that Gary may have been conscious for a minute or two after suffering the wound, but not much more. The

autopsy also revealed a scrape on Gary's back that was consistent with a grazing bullet.

## Argument and Analysis

**{¶23}** On appeal, Kennedy argues that there was insufficient evidence presented to convict her of Murder and that her conviction was against the manifest weight of the evidence. More specifically, she contends that the State did not establish that Kennedy "purposely" shot her husband with the intent to kill him. She contends that the crime scene was open to interpretation and Kennedy's own "drunken emotional statements" were not sufficient to convict her, especially since she said in her interview that she could not remember the incident, and minutes after being placed in the cruiser she could not remember having called the police.

**{¶24}** Purpose is defined in R.C. 2901.22(A) as follows.

**A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.**

**{¶25}** Purpose can be established by circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). "The element of purpose required by R.C. 2903.02 may be presumed where the natural and probable consequences of a wrongful act are to produce death." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th

Dist. 1994), citing *State v. Robinson*, 161 Ohio St. 213, 118 N.E.2d 517 (1954), paragraph five of the syllabus.

{¶26} In this case, Kennedy gave conflicting stories as to what happened on the evening in question. She first told the dispatcher that she shot Gary because he had pulled a gun on her, then she later said she did not know what happened. When she was seated on her own in the cruiser, she made statements disparaging Gary. She also made self-serving statements like she had never done anything wrong and had never been in trouble.

{¶27} The evidence indicated that three shots were fired out of the .22 revolver, all from the same general area. One of those shots grazed Gary's *back*, and another struck him in the chest, killing him. A jury could certainly infer from this that Kennedy intended to kill Gary when she shot at him three times, once specifically in the chest. The revolver was also found cocked, ready to shoot a fourth time. In addition, the coffee grounds on the floor, the wall, and the murder weapon indicated some kind of struggle.

{¶28} Combining this with Kennedy's own indication that she and Gary were the only people in the home, that they had argued earlier that evening, and her conflicting statements as to not knowing what happened to Gary and saying she shot him because he pulled a gun on her, there was sufficient evidence to find that Kennedy purposely killed Gary.

{¶29} We also cannot find that her conviction for Murder was against the manifest weight of the evidence. While Kennedy argues the evidence from the scene was subject to interpretation, if evidence is susceptible to more than one construction, a reviewing court is bound to give it the interpretation consistent with the verdict and judgment. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, quoting *Seasons Coal Co.*, *Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d Appellate Review, Section 60, at 191-192 (1978); *see also State v. Johnson*, 5th Dist. Stark No. 2014CA00189, 2015-Ohio-3113, ¶ 44. Based on the evidence presented we cannot find that the jury clearly lost its way or created a manifest miscarriage of justice in convicting Kennedy of Murder. Therefore, her sixth and seventh assignments of error are overruled.

*First Assignment of Error*

{¶30} In Kennedy's first assignment of error, she argues that she received ineffective assistance of trial counsel. Specifically she contends that her trial counsel was ineffective for failing to file a motion to suppress the statement Kennedy gave to Detective Tom Watson at the jail. She argues that the *Miranda* warnings given to her prior to the interview were incomplete and the resulting interview would thus have been inadmissible.

Standard of Review

**{¶31}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced [her]." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

**{¶32}** Counsel's failure to file a motion to suppress does not constitute ineffective assistance of counsel *per se*. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000). The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 11. However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if " 'the defense counsel could

reasonably have decided that the filing of a motion to suppress would have been a futile act.' " *Brown* at ¶ 11, quoting *State v. Edwards*, Cuyahoga No. 69077, 1996 WL 388761 (July 11, 1996), citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

**{¶33}** Moreover, in evaluating deficient performance for failure to file a suppression motion, the court must consider whether counsel made a tactical decision. *State v. Madrigal*, 87 Ohio St.3d at 389. "Evidence that counsel fully investigated the case is relevant in this deficiency evaluation." *State v. Spring*, 7th Dist. Jefferson No. 15 JE 0019, 2017-Ohio-768, ¶¶ 19-20.

Argument and Analysis

**{¶34}** On appeal, Kennedy contends that the oral explanation of her *Miranda* rights at the beginning of her interview at the jail omitted the advisement that anything Kennedy stated in the interview to the officers could be used against her at trial. She contends that without this pivotal admonition, her statement was subject to suppression and would not have been admissible at trial.

**{¶35}** At the outset, we note that at the beginning of her interview at the jail, Detective Tom Watson gave Kennedy a written explanation of her rights and indicated that she could read along with him. Kennedy got out her glasses and appeared to read the paper even as Detective Watson explained that at any time she could elect to stop talking to him. Detective Watson clearly explained to Kennedy

that she had the right to remain silent, the right to talk to a lawyer before they asked her any questions, and that a lawyer would be appointed for her if she could not afford one.

{¶36} It is true that in the oral recitation of *Miranda* rights, Detective Watson did not explicitly state that anything Kennedy said could be used against her in court. However, Kennedy can be seen in the video signing a written waiver of her rights, but that waiver was never introduced into evidence because the admissibility of the interview was never challenged. Nevertheless, the parties seem to be in agreement at oral argument that the written waiver was also deficient.[2]

{¶37} Even assuming that the written waiver of rights similarly omitted the statement, the record clearly indicates that at trial, defense counsel *wanted* the jail interview to be played to the jury so that the jury could hear Kennedy's story without her being subject to cross-examination. In fact, defense counsel stipulated to the interview's admissibility and used it in crafting Kennedy's defense strategy.

{¶38} Through the interview, Kennedy was able to present information that she gave to the police that was favorable to her, like that Gary had hit her in the past and that he had issues with Vietnam. Kennedy also repeatedly denied remembering

---

[2] After oral arguments, Kennedy filed a motion for this Court to take judicial notice of the deficient written waiver, which was attached to the motion, but otherwise not physically in our record. We cannot take judicial notice of matters outside the record; however, we are addressing the argument as though the written waiver was deficient.

what happened in the interview, leading to defense counsel's argument that she could not have acted purposely if she could not even remember.

{¶39} Thus through the interview, Kennedy was able to present a statement to the jury about the event in question without having to be subject to cross-examination—a statement that was used in crafting her defense. Defense counsel leaned heavily on Kennedy's purported lack of memory in trying to argue that she did not purposely kill her husband. In closing arguments, she indicated there was no point in calling Kennedy to the stand because if the jury did not believe Kennedy did not remember what happened at the time of the interview, they would not believe her at trial stating the same thing.

{¶40} The Supreme Court of Ohio has found that a tactical decision by trial counsel to not challenge a police interview in order to allow a defendant's explanation of events does not constitute ineffective assistance of counsel. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 117, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶¶ 32-34. This appears to be precisely what took place here. We cannot find under these circumstances that trial counsel was ineffective merely because the strategy ultimately proved unsuccessful. Therefore, Kennedy's first assignment of error is overruled.

*Second Assignment of Error*

**{¶41}** In Kennedy's second assignment of error, she argues that it was plain error to admit Kennedy's videotaped interview at the jail into evidence, even though the issue was not raised by defense counsel.

Standard of review

**{¶42}** "[T]he plain error test is a strict one: '[A]n alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." ' " *State v. Murphy*, 91 Ohio St.3d 516, 2001-Ohio-112, quoting *State v. Campbell,* 69 Ohio St.3d at 41, 630 N.E.2d at 345, quoting *State v. Long*, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The Supreme Court of Ohio has "warned that the plain error rule is not to be invoked lightly." *Murphy* at 532. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

**{¶43}** Moreover, under the plain error standard, " 'the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights' " and " '[e]ven if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." ' " (Emphasis sic.) *State v. Hartley*, 3d Dist. Hancock No. 5-14-04, 2014-Ohio-4536, ¶ 10, quoting *State v. Perry,* 101 Ohio St.3d 118, 2004–Ohio–297, ¶ 14,

quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, (2002), and *Long,* 53 Ohio St.2d 91, at paragraph three of the syllabus.

Analysis

**{¶44}** As we have already noted, defense counsel employed the interview at the jail as part of the trial strategy in this matter. We found no ineffective assistance of counsel for the failure to seek suppression of the interview in this matter. Similarly, we cannot find that it was plain error to introduce the interview into evidence when the defense *stipulated to its admissibility* to use it as part of trial strategy. For these reasons Kennedy's second assignment of error is overruled.

*Third Assignment or Error*

**{¶45}** In Kennedy's third assignment of error, she argues that her trial counsel was ineffective for failing to seek suppression of the statements that she made that were recorded in the sheriff's vehicle. Specifically, she argues that the statements would have been subject to suppression because Kennedy's will was "overborne" due to her age, her level of intoxication, her absence of experience in the criminal justice system, and the length of her detention in the "cold" police cruiser without proper clothing.

Analysis[3]

**{¶46}** When Deputy Dixon reached Kennedy's residence on the evening of the shooting, he escorted her out of the residence and placed her in the back of his cruiser. It was 20 degrees or below outside, but the cruiser's motor was running, with the heat turned up. Deputy Dixon activated an audio recorder that was in the vehicle and it recorded a number of statements that Kennedy made to herself. Notably, she made these statements, including many disparaging of Gary, and some self-serving statements such as never being in trouble before, without being asked *any* questions by *anyone*, as the officers were in the residence.

**{¶47}** Although the statements would seem entirely voluntary, Kennedy argues on appeal that her will was overborne by, among other things, the cold temperature. However, Deputy Dixon testified that the heat was on in the vehicle and at one point he asked her if she was doing okay and she said no, but then she only inquired about her dogs. She did not mention being cold until after she *voluntarily* left the unlocked cruiser, went outside, and then returned to the cruiser. At that time she had already made numerous statements.

**{¶48}** There is simply no indication of coercive police activity that would warrant suppression in this matter. *State v. Dukes*, 4th Dist. Scioto No. 16CA3745, 2017-Ohio-7204, ¶ 47, citing *State v. Williams*, 4th Dist. Scioto No. 10CA3381,

---

[3] We refer to the standard of review from Assignment of Error No. 1, as it is applicable here.

2012–Ohio–6083, ¶ 19; citing *State v. McGuire*, 80 Ohio St.3d 390, 401, 686 N.E.2d 1112 (1997).

**{¶49}** Moreover, while Kennedy made some unfavorable statements, she also made some statements that the jury was allowed to hear that were favorable to the defense, such as she had never been in trouble, that they would not hurt each other, that Gary always played games, and that he wanted to die. Letting the statements be admitted in evidence seemed to be part of the defense's trial strategy. Again, simply because the strategy was not successful does not amount to ineffective assistance. For all of these reasons, Kennedy's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶50}** In Kennedy's fourth assignment of error she argues that the trial court erred by failing to instruct the jury on the "lesser included offense" of Negligent Homicide. Specifically, she argues that the issue for the jury to determine was her mental culpability, and that a jury could have found that she did not purposely kill her husband, but rather did so accidentally.

Analysis

**{¶51}** The Supreme Court of Ohio has stated explicitly that "Negligent homicide is not a lesser included offense of murder." *State v. Koss*, 49 Ohio St.3d

213 (1990), at paragraph 4 of syllabus.  For this reason alone Kennedy's assignment of error is not well-taken.

{¶52} Nevertheless, the defense requested a lesser-included instruction on "Negligent Homicide," and the trial court concluded that the evidence did not warrant it, reasoning as follows.

> **THE COURT:  Well, the – she would have to be negligent three times, I guess, is the problem I'm having.  Multiple shots.  And negligence to me implies, as I said, you know, yesterday, if I'm cleaning the gun and there's one in the chamber and it goes off and kills you, you've got a pretty good argument that I'm negligent.**
>
> **If I'm drunk and cleaning the gun and one goes off, I question whether I still get to be negligent.  But – and even if I give you that, I can't clean the gun three times and shoot three times.  So, I'm not seeing negligence, so that instruction is not going to be included.**

(Tr. at 798).

{¶53} We agree with the trial court.  Kennedy originally called 911 and said she shot her husband after he pointed a gun at her.  She later told a story that she was asleep and found her husband having already been shot.  Neither of these scenarios, even if believed, presents an accidental or negligent shooting.  Therefore, Kennedy's fourth assignment of error is overruled.

*Fifth Assignment of Error*

{¶54} In Kennedy's fifth assignment of error, she argues that the trial court erred by redacting a portion of her interview at the jail wherein she stated she would

potentially be willing to take a polygraph examination. No polygraph was ever taken, and no stipulations were ever made as to the admissibility regarding a polygraph examination.

{¶55} The Supreme Court of Ohio has previously rejected similar arguments where there was an offer made to take a polygraph but no polygraph was actually taken, and no stipulations pursuant to *State v. Souel*, 53 Ohio St.2d 123 (1978), were made.

> **The subject of polygraph examinations is complex, confusing to the jury, and not relevant to the issues at trial. Even if [the defendant] had successfully taken a polygraph examination, the trial court could refuse to admit this evidence. *State v. Jamison* (1990), 49 Ohio St.3d 182, 190, 552 N.E.2d 180, 188. Although polygraph examination results may be admitted for corroboration or impeachment, the parties must first jointly stipulate admissibility and follow certain explicit conditions. *State v. Souel* (1978), 53 Ohio St.2d 123, 7 O.O.3d 207, 372 N.E.2d 1318; *State v. Levert* (1979), 58 Ohio St.2d 213, 12 O.O.3d 204, 389 N.E.2d 848. If polygraph examination results were not admissible, the trial judge had no reason to allow [a defendant's] asserted offer into evidence. See *State v. Woodruff* (1983), 10 Ohio App.3d 326, 10 OBR 532, 462 N.E.2d 457.**

*State v. Jackson*, 57 Ohio St.3d 29, 37, 565 N.E.2d 549, 558 (1991)

{¶56} We are compelled to follow precedent from the Supreme Court of Ohio, and in doing so here, Kennedy's fifth assignment of error is overruled.

*Conclusion*

{¶57} For the foregoing reasons Kennedy's assignments of error are overruled and the judgment of the Logan County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**