[Cite as *State v. Miller*, 2023-Ohio-3935.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO. 13-23-03

      v.

ROSHAWN J. MILLER,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 22 CR 0114

**Judgment Affirmed**

Date of Decision: October 30, 2023

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Derek W. DeVine* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Roshawn J. Miller ("Miller"), brings this appeal from the February 14, 2023, judgment of the Seneca County Common Pleas Court sentencing him to prison after he was convicted of Attempted Murder with a firearm specification and Having Weapons While Under Disability. On appeal, Miller argues that his convictions were against the manifest weight of the evidence, that the trial court erred by determining that he had not established the affirmative defense of insanity, and that the Reagan Tokes Law is unconstitutional. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On June 25, 2021, Dakota C. was driving on State Route 4 when he observed a vehicle by the side of the road that he believed to be disabled. He stopped to render assistance, but the driver of the other vehicle, Miller, fired a gun into Dakota's vehicle five times, striking Dakota once in the back. Dakota and Miller had never met or communicated prior to the shooting.

{¶3} As a result of Miller's actions he was indicted for Attempted Murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A), a first degree felony (Count 1), Felonious Assault in violation of R.C. 2903.11(A)(2), a second degree felony (Count 2), and Having Weapons While Under Disability in violation of R.C.

2923.13(A)(2), a third degree felony (Count 3). The first two counts in the indictment carried firearm specifications pursuant to R.C. 2941.145(A).

{¶4} On July 21, 2021, Miller filed a written plea of not guilty by reason of insanity ("NGRI") and he also challenged his competency to stand trial. Miller was subsequently evaluated by two doctors and they both determined that he was competent to stand trial.[1] Based on the evaluations, the trial court determined that Miller was competent to stand trial. Once he was determined competent to stand trial, Miller pled not guilty to the charges and he maintained his NGRI plea.

{¶5} Miller proceeded to a bench trial on February 13-14, 2023. Prior to the conclusion of the trial, the State dismissed the Felonious Assault charge and the accompanying firearm specification (Count 2). Ultimately, the trial court found Miller guilty of Attempted Murder, with the accompanying firearm specification, and guilty of Having Weapons While Under Disability.

{¶6} On February 14, 2023, Miller was sentenced to serve an indefinite prison term of 10-15 years on the Attempted Murder charge, a consecutive 3-year prison term on the firearm specification, and a concurrent 18 month prison term on the Having Weapons While Under Disability conviction. It is from this judgment that Miller appeals, asserting the following assignments of error for our review.

---

[1] Miller actually requested a third evaluation, and that request was granted by the trial court but the report is not in the record.

**First Assignment of Error**

**Because the trial court, as trier of fact, lost its way and created a manifest miscarriage of justice in finding Appellant guilty of each of the counts contained in the Indictment, Appellant's convictions were against the manifest weight of the evidence.**

**Second Assignment of Error**

**Because Appellant proved, by a preponderance of the evidence, that at the time of the commission of the offenses, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts, and thus established the affirmative defense of insanity, Appellant's convictions were against the manifest weight of the evidence.**

**Third Assignment of Error**

**R.C. 2967.271, also known as the "Reagan Tokes Act," which allows the Ohio Department of Rehabilitation and Correction to unilaterally extend Appellant's sentence, is unconstitutional under both the United States Constitution, Arts. I, II, and III, and Amends. V, VI and XIV, and the Ohio Constitution, Art. I, § 10, and Art. IV, §§ 1 and 3(B)(2).**

*First Assignment of Error*

{¶7} In his first assignment of error, Miller argues that his convictions for Attempted Murder and Having Weapons While Under Disability were against the manifest weight of the evidence.

Standard of Review

{¶8} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so,

-4-

this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶9} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Controlling Statutes

{¶10} Miller was convicted of Attempted Murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A). The controlling "attempt" statute, R.C. 2923.02(A), reads as follows:

> No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

The pertinent "murder" statute, reads as follows:

> No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

Miller was also convicted of Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2), which reads as follows:

(A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

\* \* \*

(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

### Evidence Presented at Trial

{¶11} Dakota C. testified that after he finished work for the Village of Attica on June 25, 2021, he drove south on State Route 4 toward Bucyrus to pick up his daughter. While he was driving, Dakota called his mother to discuss logistics of getting his daughter.

{¶12} When Dakota was approximately three miles south of Attica, he saw a silver car stopped on the side of the road facing north toward Attica. Based on where the car was stopped, Dakota thought that the vehicle might be disabled. Dakota drove past the vehicle and turned around, thinking he would ask the driver if the driver needed assistance. Dakota could not see if anyone was in the car when he passed it or when he pulled up next to it due to the tinted windows.

{¶13} Once beside the vehicle, Dakota lowered his window, intending to speak with the driver, but when the driver lowered his window, the driver fired a

gun at Dakota five times. All five bullets struck Dakota's car. One bullet went through the exterior of Dakota's vehicle, through the back of Dakota's seat, and it struck Dakota in the back.

{¶14} Dakota, who was still on the phone with his mother, said "what the fuck dude, you just shot me." (Tr. at 44). Dakota quickly drove away, back toward Attica. He told his mother that he had been shot and that his back was bleeding. Dakota and his mother ended their call. Dakota's mother called 911 and Dakota also called 911.

{¶15} Dakota was still on the phone with 911 when he stopped at a building in Attica and asked for assistance from a billing clerk. The clerk took the phone from Dakota and spoke with the 911 operator until EMS arrived. According to the clerk, who testified at trial, Dakota described the shooter as a black man with short hair and a long neck.

{¶16} Police officers and EMS arrived to treat Dakota's wound. Dakota told his story to law enforcement officers and the officers also learned from dispatch that a silver vehicle was still stopped on the side of the road in the area where Dakota had been shot. Numerous law enforcement officers immediately drove to the area and surrounded the silver vehicle.

{¶17} Initially, officers could not discern whether anyone was in the vehicle, but as they shouted commands, Miller waived his arm out of the vehicle's driver's-

side window. Officers then ordered Miller to step out of the vehicle with his hands up. Miller complied with all the orders officers gave him, including lifting his shirt and spinning slowly; however, Miller did not speak at the scene. One officer who read Miller his Miranda rights said Miller nodded his head as though he understood when his rights were explained to him.

{¶18} A BCI agent searched Miller's vehicle and located a Taurus 1911 .45 caliber firearm on the floorboard under the driver's seat.[2] There were two cartridges in the magazine and one round in the chamber. Three fired cartridges were found in Miller's vehicle. A spent casing was also found on the ground outside of Miller's vehicle.

{¶19} The same BCI agent searched and analyzed Dakota's vehicle, locating five ballistic impacts on the exterior of the vehicle. The driver's-side window of Miller's vehicle was shattered, and a fired bullet was located on the floorboard behind the driver's seat. The bullet was tested and compared with those in the Taurus 1911 .45 caliber firearm taken from Miller's vehicle, and the bullets were found to be consistent. Further, DNA consistent with Miller's was located on the Taurus 1911 and, specifically, on the trigger. DNA of another unknown contributor was also located on the firearm.

---

[2] The full search of the vehicle did not occur the day of the shooting.

{¶20} Dakota testified at trial that he did not know Miller and had never met him. Both Dakota and Miller's phones were analyzed and no connections between them could be found. Dakota identified Miller at trial as the man who shot him. Due to his injury, Dakota was taken to the hospital with a "golf ball"-sized wound in his back. Some metal was extracted from the wound.

{¶21} Meanwhile, Miller was also taken to the hospital because he was largely non-responsive to law enforcement. A sheriff's deputy testified that at the time Miller was taken into custody, the officers did not know for sure that there had not been some kind of struggle or if Miller had hit his head. Because Miller was not responding verbally, he was taken to the hospital to get "medically cleared."

{¶22} At the hospital, Miller remained mostly non-verbal. He would shake his head or nod in response to questions and he would look the nurses in the eyes when they asked him to do so. Miller did verbalize his last name and birthday, and responded to one question with "yes ma'am." Miller also refused to give a urine sample. Since he was showing no acute signs of distress, Miller was released from the hospital.

{¶23} A detective then attempted to interview Miller, but when Miller did not communicate verbally after approximately twenty minutes, the detective ended the interview. The detective did testify that Miller was listening and that he seemed to understand, but he did not communicate.

{¶24} Notably, the State introduced evidence that Miller had a prior conviction for Robbery with a firearm specification, indicating that he was under a disability that had not been removed at the time of the shooting.

{¶25} Based on the evidence presented, the trial court convicted Miller of Attempted Murder with a firearm specification and Having Weapons While Under Disability.

Analysis

{¶26} Miller contends that the trial court clearly lost its way and created a manifest miscarriage of justice in this matter because, he claims, the evidence did not establish that he acted "purposely" with regard to the Attempted Murder or "knowingly" with regard to Having Weapons While Under Disability. Miller contends that because there was no prior relationship between himself and Dakota, the State did not establish a motive. Further, he contends that his silence and his demeanor following his arrest show that he could not have acted purposely or knowingly at the time of the shooting. Finally, Miller contends that mental illness and/or drugs prevented him from forming the requisite mental culpability to commit the crimes.

{¶27} The mental culpability elements at issue, purposely and knowingly, are defined in R.C. 2901.22 as follows:

> (A)  A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a

prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

(B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶28} Importantly, proof of intent, including proof that a person acted purposely, can be established by circumstantial evidence. *State v. Kennedy*, 3d Dist. Logan No. 8-18-01, 2018-Ohio-4172, ¶ 25. In fact, " '[t]he element of purpose required by R.C. 2903.02 [the Murder statute] may be presumed where the natural and probable consequences of a wrongful act are to produce death.' " *Id*. quoting *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist.1994), citing *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus.

{¶29} Here, when Miller lowered his window, he fired not one, not two, not three, not four, but five bullets directly at Dakota. Although four shots were off target or were deflected by the car, one went through the car's exterior, through the driver's-side seat, and struck Dakota in the back. A factfinder could readily determine that Miller's act of pointing a firearm at Dakota and shooting *five shots directly at him*, striking him once, was a purposeful attempt to cause death given

that the natural and probable consequences of pointing a .45 caliber firearm at someone and shooting at them five times from a short distance are to produce death. *See State v. Kennedy*, 3d Dist. Logan No. 8-18-01, 2018-Ohio-4172.

{¶30} Furthermore, the factfinder could readily determine that Miller knowingly had the weapon while under disability given his prior conviction and prison sentence because Miller used the firearm and it was located under his car seat.

{¶31} While Miller's behavior and his relative silence after the shooting may have been unusual, we do not find that the trial court clearly lost its way by determining that he acted purposely and knowingly with respect to the requisite elements of his crimes. Officers and nurses who interacted with Miller indicated that he appeared to understand when they spoke to him, Miller just did not respond. This could just as validly be an exercise of a right to remain silent from someone who has been through the system as it could be unusual behavior.

{¶32} Finally, we note that at trial Miller primarily focused his defense on the State's failure to prove its case, specifically the identity of the shooter, beyond a reasonable doubt. Miller's argument on appeal that he was the shooter but could not have acted "knowingly" is an entirely inconsistent claim.

{¶33} In sum, as the evidence supports the trial court's findings of guilt in this matter, we cannot find that the trial court clearly lost its way by convicting

Miller of Attempted Murder with a firearm specification and of Having Weapons While Under Disability. Therefore, his first assignment of error is overruled.

Second Assignment of Error

{¶34} In his second assignment of error, Miller argues that the trial court clearly lost its way by not determining that he was not guilty by reason of insanity.

Analysis[3]

{¶35} The Supreme Court of Ohio has held that "NGRI is an affirmative defense that must be proven by a preponderance of the evidence." *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, ¶ 17. To establish the defense of insanity, a defendant must prove by the greater weight of the evidence that at the time of the offense he did not know, as a result of a severe mental disease or defect, the wrongfulness of his act. R.C. 2901.01(A)(14).

{¶36} At the trial in this case, very little evidence was presented regarding Miller's mental state at the time of the offense. The testimony indicated that Miller was mostly silent with the police and medical staff after the altercation, but there was no indication specifically as to why this was the case. The medical staff noted no physical defects with Miller after the shooting and he was released from the hospital.

---

[3] The same standard of review applied in the first assignment of error is applicable here as well.

{¶37} Miller implied that because he had been institutionalized relatively recently prior to his actions in this case, he must have been suffering from a severe mental defect when he committed these acts. However, he presented no actual medical testimony from anyone at trial showing that he did not know the consequences of his actions.

{¶38} In his appellate brief, Miller references the competency evaluations that were entered into evidence *at the competency hearing*. Notably, the two competency evaluations were not entered into evidence at trial, thus the trial court did not have this information to consider when evaluating Miller's claim of NGRI. Nevertheless, these documents would not have been helpful to Miller as there was no affirmative indication that Miller was under a temporary or permanent insanity or some severe mental defect during the acts he committed on June 25, 2021.

{¶39} We emphasize that Miller did not present any evidence related to his NGRI plea at trial and he did not argue that he was insane at the time he committed the acts in his closing argument. Rather, he focused his argument on the State's failure to prove the identity of the shooter beyond a reasonable doubt. Simply put, the record before the trial court, as the trier-of-fact, contained no medical evidence from which a trial court could have made a finding of NGRI even if he had specifically argued it at the trial court level.

**{¶40}** Therefore, we do not find that the trial court clearly lost its way by determining that Miller's relatively unusual actions after his arrest did not establish his affirmative defense of insanity. *See State v. Murphy*, 4th Dist. Ross No. 15CA3475, 2016-Ohio-1165 (indicating that a factfinder does not lose its way by finding that NGRI was not established even when there was competing expert testimony on the issue of whether the defendant was suffering from a severe mental defect at the time of the offense). Accordingly, Miller's second assignment of error is overruled.

Third Assignment of Error

**{¶41}** In his third assignment of error, Miller argues that the Reagan Tokes Law is unconstitutional. Recently, in *State v. Hacker*, ___ Ohio St.3d ____, 2023-Ohio-2535, the Supreme Court of Ohio addressed the constitutional validity of the Reagan Tokes Law and held that it does not intrude upon the separation-of-powers doctrine, does not implicate the offender's right to a jury trial, and does not violate the offender's due-process rights. *Id.* at ¶ 25, 28, 40. Based upon the Supreme Court of Ohio's determination of these issues in *Hacker,* Miller's third assignment of error is overruled.

## Conclusion

**{¶42}** Having found no error prejudicial to Miller in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**