[Cite as *State v. Roeder*, 2024-Ohio-3054.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DAMON LEE ROEDER, II,

    DEFENDANT-APPELLANT.

CASE NO. 6-23-18

O P I N I O N

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20222062

Judgment Affirmed in Part, Reversed in Part, Cause Remanded

Date of Decision:  August 12, 2024

APPEARANCES:

    *Christopher Bazeley* for Appellant

    *McKenzie J. Klingler* for Appellee

**WILLAMOWSKI, P.J.**

{**¶1**} Defendant-appellant Damon Roeder ("Roeder") brings this appeal from the judgment of the Hardin County Common Pleas Court finding him guilty of one count of felonious assault and one count of domestic violence and sentencing him to a prison term of 8-12 years. On appeal, Roeder claims that the trial erred by not finding him not guilty by reason of insanity ("NGRI") and by not merging the sentences. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

*Factual Background*

{**¶2**} On April 17, 2022, Roeder punched his aunt, with whom he lived, twice in her face and kicked her left leg. As a result, Roeder caused a cut to the victim's face, which required stitches, and broke the victim's leg. The police arrived and observed the victim with a bruised and swollen cheek, a cut above her right eye, broken glass on the kitchen floor and a broken kitchen light. The victim informed the officer that Roeder had been telling her stories and when she did not understand, he became angry. Roeder stated that he could not live there and threatened to kill the victim. The police later found Roeder who admitted he had punched the victim.

*Procedural Background*

{**¶3**} On June 16, 2023, the Hardin County Grand Jury indicted Roeder on five counts: 1) Felonious Assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a

felony of the second degree; 2) Felonious Assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a felony of the second degree; 3) Domestic Violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree; 4) Domestic Violence in violation of R.C. 2919.25(A), (D)(2), a misdemeanor of the first degree; and 5) Domestic Violence in violation of R.C. 2919.25(A), (D)(2), a misdemeanor of the first degree. Roeder filed a plea of not guilty by reason insanity and also requested a psychiatric evaluation to ascertain his competency to stand trial. A hearing on Roeder's competency was held on November 9, 2022. The trial court determined that at that time, Roeder lacked the capacity to understand the nature and objective of the proceedings and the ability to assist his attorney in his defense. The trial court determined that Roeder was incompetent to stand trial and ordered him to be sent to the Northwest Ohio Psychiatric Hospital for treatment.

{¶4} On March 1, 2023, a second competency hearing was held. At that time testimony was presented by Dr. Jonathan Sirkin ("Sirkin") that Roeder was competent to stand trial. The trial court then set the matter for a jury trial. On March 3, 2023, Roeder filed a motion to convert the jury trial to a bench trial with an affirmative defense of NGRI. On April 26, 2023, the State filed a request for a competency reevaluation. On May 4, 2023, Roeder's counsel filed a motion for another competency evaluation as well. Both the State and Roeder's counsel point to the incoherency of the letters sent by Roeder to the police, counsel, and the prosecutor's office. Counsel provided specific instances where the statements in

the letters were illogical and senseless, such as Roeder claiming to be very wealthy, that the victim was stealing his wealth from him, that Roeder is the CEO of multiple corporations such as Netflix, Chase Bank, Sony, and Starbucks, among others. Roeder was also claiming that the victim was a terrorist and that the FBI would be assisting him during trial by granting him immunity as a U.S. diplomat working for the U.S. Department of State. Counsel indicated that since the March 1 hearing, there was an "apparent and rapid deterioration of [Roeder's] competency". The trial court then allowed a second competency evaluation to be conducted by Dr. Mark Babula ("Babula").

{¶5} On July 26, 2023, another competency hearing was held. Babula determined that Roeder was capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. Although Babula found Roeder to suffer from serious mental illness, Babula found that the treatment had reduced the symptoms from a more severe state. Roeder had demonstrated the ability to recognize many facts related to his case and the court process, thus making him capable of interacting with his attorney appropriately. The trial court then found Roeder competent to stand trial.

{¶6} A bench trial was held on October 11 and 12, 2023. At trial, the parties stipulated to the admission of the reports made by Sirkin, dated February 21, 2023, and Babula, dated July 22, 2023. The parties also stipulated to the medical records from the victim, the police incident report, the police call log, the 911 call recording,

the bodycam footage of the Ada Police Department, the qualifications of the witnesses, the date of the incident, and that the incident occurred in Hardin County. The State presented the testimony of multiple witnesses and Roeder testified on his own behalf. At the conclusion of the trial, the trial court found Roeder guilty of Count One, Felonious Assault in violation of R.C. 2903.11(A)(1) and Count Three, Domestic Violence in violation of R.C 2919.25(C).[1] Doc. 112. The trial court found Roeder not guilty of the remaining counts. A pre-sentence investigation report was prepared and reviewed by the trial court. On November 21, 2023, the trial court held a sentencing hearing. The trial court ordered Roeder to serve a prison term of 8-12 years on Count One and 180 days on Count Three, with the sentences to be served concurrently. Additionally, the trial court ordered that Roeder receive credit for 573 days already served. Roeder appeals from this judgment and raises the following assignments of error on appeal.

**First Assignment of Error**

**The trial court abused its discretion when it found that Roeder was not NGRI.**

**Second Assignment of Error**

**The trial court erred when it failed to merge Roeder's convictions for sentencing purposes.**

---

[1] The trial court found a violation of R.C. 2919.25(C) although the indictment listed R.C. 2919.25(A) after a discussion with the parties.

*NGRI*

**{¶7}** Roeder claims in the first assignment of error that the trial court erred by failing to find him NGRI. "NGRI is an affirmative defense that must be proven by a preponderance of the evidence." *State v. Harris*, 2015-Ohio-166, ¶ 17. "A person is "not guilty by reason of insanity" relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14). To establish the defense of insanity, a defendant must prove by the greater weight of the evidence that at the time of the offense he did not know that his actions were wrong. *State v. Miller*, 2023-Ohio-3935, ¶ 35 (3d Dist.).

**{¶8}** Here, there is no dispute that Roeder suffers from mental illness. Both Sirkin and Babula testified to this. Roeder's background shows that he has been in and out of mental facilities over the years. Additionally, his filings to the court, the filings of the State, the filings of his counsel, along with the statements made in his testimony are sufficient to show there is a mental illness issue.[2] However, the standard is not whether Roeder suffers from mental illness, but whether he knew of the wrongfulness of his actions at the time he committed the acts.

---

[2] Roeder filed many handwritten motions and letters with the trial court filled with conspiracy theories and allegations that he is a U.S. Diplomat with immunity from all charges as well as CEO of multiple international corporations with citizenships in the U.S., U.K. and Switzerland. He also claimed that his real name was Kyle Rothschild and he was the lost heir to a fortune. Roeder indicated that his actions were self-defense because his victim was a terrorist.

{¶9} Sirkin testified that he had conducted a competency evaluation of Roeder. He reviewed Roeder's hospital records, a prior forensic report, police records, and court records. He also spoke with Roeder's doctors from when Roeder was an inpatient. Sirkin indicated that he determined Roeder was competent to stand trial because he understood the nature and objectives of the court proceedings. Sirkin also determined that Roeder did not meet the criteria for NGRI in Ohio because Roeder "said explicitly that at the time of the offense he knew it would be wrong to hit his aunt except in self-defense." Tr. 20-21. Roeder also told Sirkin that he did not have any delusional reasons for thinking he was in danger from his victim. At the time Sirkin met with Roeder, he appeared to be as stabilized as he was likely to get. As a result, Sirkin found Roeder to be a reliable reporter as to what he was thinking at the time of the assault. Sirkin reviewed Babula's report and determined that Roeder was not as stable when Babula interviewed him. The test results showed that Roeder was "acutely symptomatic" at that time. Sirkin testified that at the time of the assault, Roeder was "emotionally irritable" and was overreacting to what was going on around him. At the time Roeder struck his aunt, his medications may not have been at full effect, but there was a partial effect, so he would have been partially stabilized. When Sirkin spoke with Roeder about the assault, Roeder did not describe any psychotic process, just irritation with his victim. Roeder told Sirkin that striking the victim was justified because she was in his face, but he knew it was not right because the victim had not struck him. Roeder's only

reason for hitting his victim was because he believed she might hit him as she was in his face, so he hit her first. On cross-examination, Sirkin testified that seeing the body-cam footage would have been useful, but was unlikely to have changed his opinion unless it was so "dramatic" as to undermine what was in the police reports.

{¶10} Babula testified that he had examined Roeder in June of 2023. At that time, Babula conducted a competency evaluation as well as the NGRI evaluation. Babula determined that Roeder was competent to stand trial. However, Babula determined that Roeder qualified for NGRI status because there "was a severe mental disease and defect that interfered with his ability to recognize the wrongfulness of his actions at that time." Tr. 63. In reaching this conclusion, Babula relied upon the interview and psychological testing completed by Roeder, the police incident report, Roeder's medical records, previous reports, the initial case analysis, the correspondence sent by Roeder, the body cam footage, and a letter from Roeder's guardian. Babula determined from Roeder's medical records and the psychological testing that Roeder suffered from a mental illness severe enough to impact his ability to determine right from wrong in his behaviors. Babula disagreed with Sirkin because Sirkin based his report mainly upon Roeder's self-reporting while Babula found the self-reporting to be the least reliable. Roeder's statements were not shown to be reliable. Babula noted that when he spoke with the victim, his report was very different from the self-report by Roeder. Roeder believed he was acting in self-defense, but the belief was based upon his delusions that were

present due to his mental illness. Babula believed the body cam footage to be very useful because it was taken within hours of the incident, so was the clearest evidence of Roeder's mental state at the time of the incident and was also the most objective. Babula determined that just because a person is competent now does not mean that they can clearly remember what happened previously as those memories could be colored by prior thinking.

{¶11} Following the testimony of the two experts, the trial court found that both experts were persuasive and had solid bases for their opinions. The trial court did not find either to be more persuasive. Because Roeder had the burden of proving that the NGRI finding applied in his case by a preponderance of the evidence, the trial court determined that Roeder did not meet his burden of proof. Thus, the trial court determined that the defense of NGRI did not apply.

{¶12} "It is well settled that when expert witnesses differ in their opinions regarding the insanity defense, the trier of fact must make a credibility determination when deciding which experts to believe." *State v. Sanders,* 2022-Ohio-2261, ¶ 71 (8th Dist.). "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." *State v. Thomas*, 70 Ohio St.2d 79 (1982), syllabus. If the record shows that the trial court considered the NGRI defense, the appellate court should defer to the trial court's interpretation of the evidence and

should only reverse the judgment if there is overwhelming and uncontradicted evidence to the contrary. *Sanders, supra.*

**{¶13}** Here, there was competing testimony as to whether the NGRI defense was applicable in this case. One expert said it was and one said it was not. The trial court found both opinions to be credible. However, Roeder was required to show that the NGRI defense applied by a preponderance of the evidence. Given the evidence before it, the trial court did not err in finding that Roeder did not meet this burden. The first assignment of error is overruled.

*Merger of Sentences*

**{¶14}** In the second assignment of error, Roeder claims that the trial court erred by failing to merge the sentences. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *State v. Ruff*, 2015-Ohio-995, ¶ 26. Thus, if the defendant's conduct results in separate and identifiable harm, the offenses are of dissimilar import. *Id.*

**{¶15}** The trial court first found Roeder guilty of felonious assault. A felonious assault occurs when a person knowingly causes serious physical harm to another. "Serious physical harm" to a person includes any harm that "involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(e). The evidence before the trial court shows that Roeder admitted to punching the victim causing the cut above

-10-

the victim's eye. Roeder also admitted to kicking the victim in the leg because the victim "looked like" she might be going to advance on him. The victim testified that Roeder punched her twice with the second one landing on her right eyebrow and caused an injury requiring stitches. The victim fell to the ground. As the victim was trying to roll away, Roeder "stomped" on her leg, breaking it. Broken bones have been held to constitute serious physical harm for compliance with R.C. 2901.01. *State v. Taylor*, 2023-Ohio-1766 (2d Dist.).

{¶16} The second guilty verdict was for domestic violence. The trial court found that Roeder had violated section (C) of the statute. This section provides that no person by threat of force will knowingly cause a household member to believe the offender will cause imminent harm to that person. R.C. 2919.25(C). The victim testified that after Roeder assaulted her, she was trying to escape to the bathroom. She then saw Roeder pulling the chandelier down from the ceiling and smashing it to the floor. Roeder admitted he pulled down the light fixture in his anger. Additionally, Roeder told her after punching her that he was going to kill her. The victim indicated that she was afraid that Roeder was going to strike her further so she was "hunched down like this bracing for something else." Tr. 165.

{¶17} Comparing the harm of the two charges, they are separate and distinct. The harm from the felonious assault was the broken bone and stitches to her head. The harm from the domestic violence was the threat, both spoken and unspoken, that Roeder was going to inflict additional physical harm. Because the harm is

separate and identifiable, the convictions are dissimilar and do not merge for the purposes of sentencing.[3] The second assignment of error is overruled.

{¶18} Although this Court finds no error prejudicial to the appellant in the particulars assigned and argued, this Court *sua sponte* sees an error that makes the sentencing as to Count Three contrary to law. The trial court specifically noted that it was finding Roeder guilty of a violation of R.C. 2919.25(C), not R.C. 2929.25(A) as was charged. The trial court asked the parties whether it could find Roeder guilty under Subsection C rather than Subsection A for the breaking of the chandelier, as the trial court believed that was what the evidence showed. The State agreed that Subsection C was a lesser-included offense of Subsection A because Subsection A required causing or attempting to cause physical harm to a household member while Subsection C only requires a threat of physical harm to the household member. R.C. 2919.25. The trial court then proceeded to find Roeder guilty of violating R.C. 2919.25(C). However, the trial court mistakenly identified this violation as a misdemeanor of the first degree. A violation of R.C. 2919.25(C) is a misdemeanor of the fourth degree. R.C. 2919.25(D)(2). The trial court sentenced Roeder to 180 days for the conviction on Count Three. The maximum jail term allowed for conviction on a misdemeanor of the fourth degree is thirty days. R.C. 2929.24(A)(4). Since the sentence imposed exceeds the maximum allowed by the

---

[3] The sentences were ordered to be served concurrently, so no change in the sentence would occur regardless.

statute, the sentence is contrary to law.  *State v. Contreras*, 2021-Ohio-1356, ¶ 16 (3d Dist.).  For this reason, the sentence for Count Three is reversed and remanded to the trial court for resentencing.  The judgment of the Hardin County Common Pleas Court is affirmed in part and reversed in part.

*Judgment Affirmed in part,*
*Reversed in part,*
*Cause Remanded*

**WALDICK and MILLER, J.J., concur.**

**/hls**