[Cite as *State v. Flack*, 2023-Ohio-1705.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                   CASE NO. 14-22-24

    v.

JONATHAN ROBERT FLACK,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2021 CR 0232

**Judgment Affirmed**

**Date of Decision: May 22, 2023**

APPEARANCES:

    *Alison Boggs* for Appellant

    *David W. Phillips* for Appellee

**ZIMMERMAN, J.**

{**¶1**} Defendant-appellant, Jonathan Robert Flack ("Flack"), appeals the April 26, 2022 judgment entry of the Union County Court of Common Pleas denying his motion to suppress evidence and the October 27, 2022 judgment entry of sentencing. For the reasons that follow, we affirm.

{**¶2**} This case stems from a traffic stop of the vehicle operated by Flack on October 6, 2021 by Trooper Osama Hamed ("Tpr. Hamed") of the Ohio State Highway Patrol. Tpr. Hamed observed Flack's vehicle traveling westbound along U.S. Highway 33 in Marysville, Union County, Ohio, driving below the posted speed limit and with an improperly displayed license plate. After initiating a traffic stop, Tpr. Hamed observed indicators of impairment supporting that Flack may be operating the vehicle under the influence of alcohol or drugs. Tpr. Hamed requested Flack to exit his vehicle in order to further investigate whether or not he was impaired.

{**¶3**} While Tpr. Hamed was administering the field sobriety tests ("FST") to Flack, another law enforcement officer arrived on the scene with a drug-detecting dog leading to a search of Flack's vehicle wherein a large amount of drugs and other contraband were discovered.

{**¶4**} On November 12, 2021, Flack was indicted by the Union County Grand Jury on the following criminal charges: Count One for aggravated possession of

drugs in violation of R.C. 2925.11(A), (C)(1)(e), a first-degree felony, along with major drug offender ("MDO"), firearm, notice of prior conviction, and forfeiture specifications; Count Two for aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), (C)(1)(f), a first-degree felony, with MDO, firearm, notice of prior conviction, and forfeiture specifications; Count Three for having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony, with a forfeiture specification; and Count Four for possession of criminal tools in violation of R.C. 2923.24(A), (C), a fifth-degree felony. On November 16, 2021, Flack appeared for arraignment and entered pleas of not guilty.

{¶5} On February 3, 2022, Flack filed a motion to suppress evidence arguing that Tpr. Hamed did not have probable cause to stop Flack based on his observations. The State filed a memorandum in response arguing that the traffic stop was supported by reasonable and articulable suspicion, and the warrantless search was supported by probable cause. Following the suppression hearing, the trial court denied Flack's motion to suppress evidence.

{¶6} A superseding indictment was filed on February 11, 2022, which indicted Flack on the following criminal counts: Count One for aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(e), a first-degree felony, with MDO, firearm, notice of prior conviction, and forfeiture specifications; Count Two for aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2),

(C)(1)(f), a first-degree felony, with MDO, firearm, notice of prior conviction, and forfeiture specifications; Count Three for having weapons while under disability in violation of R.C. 2923.13(A)(3), (B), a third-degree felony, with a forfeiture specification; Count Four for possession of criminal tools in violation of R.C. 2923.24(A), (C), a fifth-degree felony; Count Five for aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), a fifth-degree felony; and Count Six for possession of drugs in violation of R.C. 2925.11(A), (C)(2)(a), a fifth-degree felony. Flack appeared for arraignment on March 10, 2022 and entered not guilty pleas to the criminal counts in the superseding indictment.

{¶7} On August 22, 2022, Flack withdrew his pleas of not guilty and entered no-contest pleas, under a negotiated-plea agreement, to all counts in the superseding indictment along with all specifications. In exchange for his no-contest pleas, the State stipulated that Counts One and Two merged for the purposes of sentencing. Then, Flack stipulated to the facts detailed in the negotiated-plea agreement *as if* they were read into the record. Thereafter, the trial court accepted Flack's no-contest pleas and found him guilty of the charges.

{¶8} On October 27, 2022, the trial court held a sentencing hearing. The trial court merged Counts One and Two for the purpose of sentencing with the State electing to proceed to sentencing on Count Two. Flack was then sentenced to a mandatory prison term of one year for the firearm specification under Count Two

to be served consecutively to a minimum mandatory prison term of 11 years with a maximum of 16.5 years under Count Two. Further, Flack was sentenced to a 24-month prison term under Count Three, a six-month prison term under Count Four, and 12-month prison terms under Counts Five and Six. Counts Three, Four, Five, and Six were all run consecutively to Count Two for an aggregate term of 16.5 years to 22 years in prison.

{¶9} Flack filed a timely notice of appeal on November 23, 2022, and raises two assignments of error for our review, which we will address in the order presented.

## First Assignment of Error

**The Trial Court Erred When It Denied Appellant's Suppression Motion As The Stop Violated His Fourth Amendment Right Against Unreasonable Searches And Seizures.**

{¶10} In his first assignment of error, Flack argues that the trial court erred by denying his motion to suppress evidence. In particular, Flack asserts that the initiation and the duration of his traffic stop were unreasonable under the circumstances. Flack further argues that the canine could not distinguish smells between medical marijuana and illegal marijuana.

*Standard of Review*

{¶11} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372,

¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id*. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997), *superseded by state regulation on other grounds*, *State v. Schmehl*, 3d Dist. Auglaize No. 2-05-33, 2006-Ohio-1143, ¶ 22.

*Analysis*

{¶12} Notably, Flack did not challenge the duration of the traffic stop or the probable cause to search his vehicle in his motion to suppress or during his suppression hearing. Rule 12(C) of the Rules of Criminal Procedure requires Flack to do so and his failure "'constitute[s a] waiver of the defenses or objections' for purposes of trial." *State v. Hahn*, 3d Dist. Henry No. 7-21-02, 2021-Ohio-3789, ¶ 10, quoting *Columbus v. Cort*, 10th Dist. Franklin No. 19AP-425, 2020-Ohio-1467, ¶ 12, quoting Crim.R. 12(H). However, notwithstanding the foregoing, the State addressed the duration of the stop (in its response to Flack's motion), and the trial court (in its entry) ultimately acknowledged that even though Flack had not

challenged the duration of the stop, the continued detention was justified. Hence, we conclude the issue regarding the duration of the traffic stop has not been waived and has been preserved for our review.

{¶13} Conversely, whether the canine is credible or has the ability to distinguish smells between medical marijuana and illegal marijuana was never raised in the trial court. Thus, the trial court did not have the opportunity to consider the canine's ability to distinguish between medical marijuana and the presence of illegal marijuana. Consequently, Flack has waived his challenge related to the canine sniff, other than, plain error. *Id.*, citing *id.* at ¶ 12-13, *State v. Porter*, 2d Dist. Montgomery No. 28288, 2019-Ohio-4482, ¶ 22-23, and *Marion v. Brewer,* 3d Dist. Marion No. 9-08-12, 2008-Ohio-5401, ¶ 10. The burden to demonstrate plain error falls upon the party seeking to assert it. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16; *Hahn* at ¶ 10. On appeal, Flack has failed to develop any plain-error argument, and thus, we will not fashion one for him. *See Hahn* at ¶ 10, citing *State v. Rottman*, 6th Dist. Lucas No. L-20-1061, 2021-Ohio-1618, ¶ 7. Consequently, we will not address Flack's arguments related to the canine's credibility or ability to distinguish between medical marijuana and illegal marijuana.

{¶14} The question of whether a traffic stop violates the Fourth Amendment involves an objective assessment of an officer's actions in light of the facts and circumstances known to the officer at the time he or she initiates the traffic stop.

Case No. 14-22-24

*Dayton v. Erickson*, 76 Ohio St.3d 3, 6 (1996), citing *United States v. Ferguson*, 8 F.3d 385, 388 (6th Cir.1993). The officer must be able to point to "'[s]pecific and articulable facts' that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Purtee*, 3d Dist. Logan No. 8-04-10, 2006-Ohio-6337, ¶ 9, quoting *State v. Gaylord*, 9th Dist. Summit No. 22406, 2005-Ohio-2138, ¶ 9, citing *State v. Bobo*, 37 Ohio St.3d 177, 178-179 and *State v. Davison*, 9th Dist. Summit No. 21825, 2004-Ohio-3251, ¶ 6.

**{¶15}** The record reveals that Tpr. Hamed first observed Flack while he (Tpr. Hamed) was in the passing lane driving beside Flack who was in the driving lane traveling westbound on U.S. 33. Flack was driving slower than the posted speed limit and had an improperly displayed license plate. Tpr. Hamed testified that after he made his observations, he moved into the cross median on U.S. 33 so he could continue to observe Flack's driving behavior. Tpr. Hamed testified that he continued to observe Flack (from the cross median), then he pulled out and followed Flack.[1] According to Tpr. Hamed, once he caught up to Flack's Ford Ranger, he

---

[1] Interestingly, Flack asserts that since Tpr. Hamed pulled off the highway (sitting in the cross median) to further observe his driving behavior and because Tpr. Hamed did not initiate the traffic stop when he first observed the traffic violation, that the information was *stale*, thus necessitating further facts to justify a traffic stop. Flack is, in essence, arguing a "use-it-or-lose-it" proposition. At all times relevant herein Flack was engaged in an *ongoing* traffic violation, and consequently such an assertion lacks merit. *See United States v. Anderson*, 6th Cir. No. 10-2638, 2012 WL 283708, *3 (Jan. 31, 2012); *United States v. Street*, 614 F.3d 228,

-8-

Case No. 14-22-24

initiated a traffic stop for a violation of R.C. 4503.21. R.C. 4503.21 provides in its

pertinent part:

> (A)(1) No person who is the owner or operator of a motor vehicle shall fail to display *in plain view* on the rear of the motor vehicle a license plate that displays *the distinctive number and registration mark assigned to the motor vehicle* by the director of public safety, including *any county identification sticker* and *any validation sticker* when required by and issued under sections 4503.19 and 4503.191 of the Revised Code. * * *.

(Emphasis added.)

{¶16} In our review of the record, Flack's license plate was not displayed "in

plain view" within the meaning of R.C. 4503.21, and thus Flack was not in

compliance with R.C. 4503.21 when Tpr. Hamed initiated his traffic stop. Hence,

Tpr. Hamed had a reasonable suspicion to initiate the traffic stop of Flack.

{¶17} Next, Flack contends that the duration of his traffic stop was

unreasonable in light of the delay of Tpr. Hamed's investigation. Put more plainly–

Flack asserts that Tpr. Hamed's subjective motivation for the traffic stop was

pretextual (i.e. to uncover evidence of drug trafficking), which he argues is

supported by Tpr. Hamed's call for a canine sniff moments into the traffic stop and

Tpr. Hamed's slow administration of the field sobriety tests.

{¶18} When conducting a traffic stop, an officer "'may detain an automobile

for a time sufficient to investigate the reasonable, articulable suspicion for which

---

232 (6th Cir.2010), citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772 (1996). *See also State v. Beleford*, 3d Dist. Seneca No. 13-06-32, 2007-Ohio-1912, ¶ 5.

the vehicle was initially stopped.'" *State v. Troutman*, 3d Dist. Marion No. 9-11-17, 2012-Ohio-407, ¶ 22, quoting *State v. Smith*, 117 Ohio App.3d 278, 285 (1st Dist.1996). The stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1326 (1983). Nevertheless, if, during the course of the traffic stop, the officer develops a reasonable suspicion that the occupants of the vehicle are engaged in criminal activity unrelated to the officer's original justification for the stop, the officer may expand the scope and duration of the stop as reasonably necessary to investigate his new suspicion. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 15; *State v. Waldroup*, 100 Ohio App.3d 508, 513 (12th Dist.1995).

{¶19} Further, because this case involved a canine sniff of a vehicle, we note that law enforcement officer may cause a canine sniff of a vehicle to be conducted without reasonable suspicion of additional illegal activity, provided that "'the officer conducts [the] canine sniff of the vehicle before the reasonable completion of the traffic stop procedures * * *.'" *State v. Casey*, 12th Dist. Warren No. CA2013-10-090, 2014-Ohio-2586, ¶ 22, quoting *State v. Elliott*, 7th Dist. Mahoning No. 11 MA 182, 2012-Ohio-3350, ¶ 23, citing *State v. Winger*, 2d Dist. Darke No. 1688, 2007-Ohio-2605, ¶ 17.

{¶20} The facts reveal that, while speaking with Flack regarding his improperly displayed license plate, Tpr. Hamed observed indicators that Flack was

impaired.[2] Tpr. Hamed then removed Flack from the vehicle and placed him in his cruiser and returned to the vehicle to speak to Flack's passenger. When Tpr. Hamed returned to his vehicle, Flack admitted to using methamphetamines a few days earlier. Tpr. Hamed then elected to perform the standardized FST on Flack, and called for a canine handler.[3] *See State v. Sidey*, 3d Dist. Allen No. 1-19-32, 2019-Ohio-5169, ¶ 12, fn. 2.

{¶21} In the midst of Tpr. Hamed's investigation, a Marysville police officer arrived on scene. Tpr. Hamed stepped to the side to bring the officer up to speed on his unfolding investigation of Flack. Then, Tpr. Hamed began administering the FST on Flack while the other officer monitored traffic and Flack's passenger. While Tpr. Hamed was administering the field tests, a third officer, Ofcr. Hirtzinger (the canine handler) arrived on scene. Ofcr. Hirtzinger requested the Marysville police officer to remove the passenger from Flack's vehicle so he could start the canine-sniff process.

{¶22} Thereafter, the canine sniff resulted in a positive alert and potential for the presence of drugs in Flack's vehicle. Ultimately, a search of vehicle resulted in the discovery of drugs.

---

[2] Flack was mumbling and slow to answer Tpr. Hamed's questions, and he had glassy eyes, facial tremors, and his face was flushed.

[3] Plain City Police Officer, Josh Hirtzinger ("Ofc. Hirtzinger"), and his canine partner, Andor, were dispatched immediately and *en route*. Ofc. Hirtzinger testified at the suppression hearing.

{¶23} Under the totality of the circumstances, we conclude that Tpr. Hamed possessed a "reasonable, articulable suspicion", which was supported by "specific and articulable facts" that justified his stop of Flack for a display of license plates, registrations, marks, placards, and stickers violation. Further, Tpr. Hamed possessed a "reasonable, articulable suspicion", which was supported by "specific and articulable facts" that his observations of indicators of impairment on Flack justified the duration of the traffic stop, and Flack's continued detention during which a canine sniff was performed that developed into probable cause to search Flack's vehicle. Consequently, the trial court's findings are supported by competent, credible evidence. Thus, the trial court did not err by overruling Flack's motion to suppress evidence.

{¶24} Accordingly, Flack's first assignment of error is overruled.

**Second Assignment of Error**

**The Trial Court's Imposition Of An Indefinite Sentence Pursuant To The Statutory Scheme Knowns As "The Reagon [sic] Tokes Law" Is Unconstitutional And Must Be Reversed.**

{¶25} In his second assignment of error, Flack argues that the indefinite sentence of incarceration imposed on Count Two pursuant to the Reagan Tokes Law is unconstitutional. Specifically, Flack asserts that these provisions violate the separation-of-powers doctrine, infringe on his right to due process, and violate his right to a jury trial.

{¶26} As this Court has noted in *State v. Ball*, 3d Dist. Allen No. 1-21-16, 2022-Ohio-1549, challenges to the Reagan Tokes Law do not present a matter of first impression to this Court. *Ball* at ¶ 59. "Since the indefinite sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite sentencing provisions of the Reagan Tokes Law do not facially violate the separation-of-powers doctrine or infringe on defendants' due process rights." *Id.*, citing e.g., *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 10-11; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048, ¶ 22; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21. Further, for the reasons stated in *Ball*, the remaining constitutional issue under Reagan Tokes related to a jury trial is also unavailing. *Id.* at ¶ 61-63. Thus, on the basis of *Ball* and our prior precedent, we find no merit to Flack's arguments.

{¶27} Accordingly, Flack's second assignment of error is overruled.

{¶28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER, P.J. and WALDICK, J., concur.**

**/jlr**