**[Cite as *State v. Stevens*, 2024-Ohio-198.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**

    **v.**

**JOSHUA L. STEVENS,**

    **DEFENDANT-APPELLANT.**

**CASE NO. 1-22-81**

**O P I N I O N**

---

**Appeal from Allen County Common Pleas Court**
**Trial Court No. CR2022 0163**

**Judgment Affirmed**

**Date of Decision:  January 22, 2024**

---

**APPEARANCES:**

    *Max Hersch* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**HESS, J.**

{¶1} Defendant-appellant, Joshua L. Stevens ("Stevens"), appeals from a judgment of the Allen County Court of Common Pleas convicting him, following a jury trial, of felonious assault. Stevens presents six assignments of error asserting that (1) the trial court erred when it admitted identifying statements in an exhibit as excited utterances; (2) trial counsel rendered ineffective assistance by failing to object to an officer's recitation of an identifying hearsay statement; (3) trial counsel rendered ineffective assistance by failing to object to evidence concerning whether Stevens fled armed with a weapon; (4) multiple errors cumulatively deprived him of his constitutional right to a fair trial; (5) the trial court erred when it sentenced him to an indefinite sentence under the unconstitutional Reagan Tokes Law; and (6) trial counsel rendered ineffective assistance by failing to request a waiver of court costs at sentencing. For the reasons which follow, we overrule the assignments of error and affirm the trial court's judgment.

*Facts and Procedural History*

{¶2} In July 2022, Stevens was indicted on two counts of felonious assault against Ralph W. Dewitt. Count One alleged a violation of R.C. 2903.11(A)(1) and (D)(1)(a), and Count Two alleged a violation of R.C. 2903.11(A)(2) and (D)(1)(a). He pleaded not guilty, and the matter proceeded to a jury trial.

{¶3} Dewitt testified that on May 2, 2022, he and his brother went to help Clarence Perkins, who needed "a jump" because his car would not start. Dewitt sat in his brother's truck while his brother hooked up jumper cables. A stranger with a "three point crown" tattoo above his left eyebrow, who Dewitt later learned was Stevens, reached underneath the hood of the truck and hit the throttle. Dewitt's brother and Stevens got into an argument, and Stevens threatened to "whoop" Dewitt's brother. Dewitt got between them and told Stevens that "he wasn't going to do nothing to him [sic]." Clarence Perkins broke up the argument. Stevens walked away, Dewitt and his brother continued giving the "jump," and then Dewitt went home.

{¶4} That night, Dewitt was walking back and forth on the sidewalk in front of the home of Elsie Robinson, his next door neighbor and mother of his brother's child, while talking on the phone with a potential buyer for a car he was trying to sell. Cody Joseph, who "used to be" Dewitt's brother's best friend, was nearby, "[u]nderneath the hood of the car" looking for "the easiest way to get to the clutch," which needed a new sleeve. Dewitt heard noise on Robinson's front porch and turned toward it. He saw someone moving around on the porch, but it was dark up there, and he could not tell who the person was. Dewitt testified that Robinson kept tools on her front porch, and he heard "a whole bunch of rattling," so he "turned back around, thinking it's somebody up there getting tools," and finished his phone call. Dewitt testified that he turned around again and "got hit with a hammer." A

"[s]plit second" later, Dewitt "[s]tarted swinging back on" the attacker. There was a struggle, the hammer ended up on the ground, and the attacker got away from Dewitt and started running across the street.

{¶5} Dewitt chased the attacker, who turned around and pulled out something from his book bag, which Dewitt thought looked like a knife. At that point, Dewitt could see the person was Stevens because Dewitt "got a good look at him from the garage light." "There was a whole bunch of yelling," and "[o]ther people started coming and gathering around and looking out their windows." Dewitt kept telling Stevens "to drop it." Stevens "went to take off," and Dewitt "started hitting him again." Stevens dropped the object and then ran up an alley to the back porch of Robinson's mother's house. Stevens ran through the house, but Dewitt stopped at the back door because people "kept hollering 'there's kids in here [sic].' " Dewitt started walking down the alley back towards his home. Someone told him that Stevens had exited the front door of Robinson's mother's house and "took off up the street." Dewitt jumped into his brother's truck and "went down that way." He saw "the cops hit their spotlight," so he parked the truck in the driveway of Robinson's mother's house and walked home. Police were present when he arrived. Dewitt testified that about five minutes passed between the time he was hit with the hammer and the police showing up. Dewitt also testified about his injuries, the medical treatment he received the night of the attack, and ongoing medical problems he has had since the attack.

{¶6} Joseph testified that the night of May 2, 2022, he was at Dewitt's home, and they were working on a car which had a problem with the clutch. Joseph testified that Dewitt got a phone call, and while he was talking on the phone, Stevens came "off the porch and smacked [Dewitt] in the head with a hammer." Joseph had seen Stevens "out and about town" before but did not know him. Joseph testified that once Dewitt got hit, "he wanted to fight," but Joseph did not see any punches exchanged. Stevens "took off running down the alley." Joseph was not sure if Stevens still had the hammer. Dewitt chased Stevens, Stevens ran "up in a house down the street," and Dewitt came home. When asked how much time passed between Dewitt getting hit and police arriving, Joseph testified that "it wasn't a matter of no time [sic]. They must have been in the area 'cause, I mean, ten/fifteen minutes, if that."

{¶7} Patrolman Nevan Stolly of the Lima Police Department testified that on May 2, 2022, around 9:00 p.m., he and his partner, Patrolman Stevenson, "responded to a fight in the front yard of" 905 East Second Street, i.e., Dewitt's residence. Upon arrival, Patrolman Stolly observed "[a] very chaotic scene. A lot of yelling and screaming. A lot of people standing around." Patrolman Stolly testified that he was "confronted by a female," Robinson, who had "an object in her hand" and was "kind of just trying to explain to me what happened." Robinson "was very distraught," "very excited," and "very upset kind of." She handed him a hammer with "a plastic bag at the end of it that she was holding on to." Patrolman

Stolly testified that Robinson "stated a gentleman by the name of Josh had struck a gentleman that was out front of the residence on the street with a hammer and had taken off on foot." The prosecutor asked, "Who had taken off on foot?" and Patrolman Stolly testified, "Josh Stevens is who she stated." Patrolman Stolly testified that Robinson told him the hammer "was stolen off the front porch." The prosecutor said, "That would be off of her front porch?" and Patrolman Stolly testified, "Yes." The prosecutor asked, "How did you know it was taken off of her front porch?" and Patrolman Stolly testified, "She stated." Defense counsel then objected on hearsay grounds. The trial court overruled the objection, finding the excited utterance hearsay exception applied. Subsequently, Patrolman Stolly testified that he also determined a knife was taken from Robinson's porch that night and believed Stevens had taken it. Patrolman Stolly unsuccessfully tried to locate the knife.

{¶8} Patrolman Stolly testified that he was wearing a body camera that night. The state asked to play the footage for the jury, and defense counsel objected and stated:

> [T]his is going to contain statements from witnesses beyond just the one we had, the excited utterance we had. It will contain statements that are testimonial in nature, however are not subject to admissibility right now because it doesn't meet one of the exceptions under Crawford, even though it does meet an 803 exception for hearsay of declarants not here to testify or to be cross examined. It's based on, well, has to do with location of various things, location of a weapon, and location of actually one weapon that we have and another that we

don't have. Basically, without any sort of opportunity to cross examine it's not fair to have that testimony played for the jury.

In response, the prosecutor asserted that "Patrolman Stolly did lay the necessary foundation for the excited utterance" and that the prosecutor believed defense counsel "agreed the excited utterance was met." The prosecutor stated, "I think the issue here would be confrontation clause and Crawford" and argued that an "exception to Crawford" for an on-going emergency applied. The trial court overruled the objection. The court found playing the body camera footage would not violate the Confrontation Clause and that "all of these statements would be excited utterances by the people." The trial court noted: "Quite honestly, I was a little bit surprised when I first viewed the body cam. I expected to see just craziness, chaotic craziness. It was chaotic. It's not as crazy chaotic as I've probably seen on some other videos. But, I would still say that the people who were speaking were all in a state of stress of the event."

{¶9} Pertinent to this appeal, the footage begins with Patrolman Stolly walking toward some people and asking, "What's going on?" Robinson approaches him and distinctly says "Josh," "the guy in the truck," and "got assaulted." Although it is difficult to discern, it sounds as if she says, "The boy Josh. The guy in the truck is the one that got assaulted." Robinson holds up a hammer and says, "Here's the weapon." She puts the hammer on the ground at Patrolman Stolly's direction. Patrolman Stolly again asks what happened. Robinson tells him that "my

perspective that's the weapon," and "the man stole it off my front porch." Someone, possibly Patrolman Stevenson, asks who got assaulted. Patrolman Stolly says, "The guy in the truck that just took off?" Robinson says, "Yes." Someone, possibly Patrolman Stevenson, says, "He doesn't want our help?" Robinson yells in the direction of other bystanders, "Ralph doesn't want no help, right [sic]?" Then she yells, "Jessica! Ralph don't want no help [sic]?" Jessica Watkins approaches as Robinson says that she wants "that man for stealing off my property for one." Watkins was evidently Dewitt's fiancée at the time of the incident and wife at the time of trial, though she referred to Dewitt as her "husband" on the footage.

{¶10} Patrolman Stolly asks what happened to the guy that got assaulted. Watkins says, "My old man." Joseph says, "The boy grabbed a hammer out of his back and busted him in the head with it." Watkins says, "Hit him in the head and he took off. My husband's got a big old knot in his head right here where he hit him with that hammer." Patrolman Stolly asks about the person who just took off in the truck and about why people were screaming. Then Patrolman Stolly says, "Where's the guy that hit him over the head with the hammer?" Watkins says, "I don't know." Patrolman Stolly asks what he was wearing, and Watkins says, "All black." Patrolman Stolly asks if he is "a white male, black male." Watkins says, "White male." Then, about 90 seconds into the footage, Robinson says, "His name is uh …" Watkins says, "Josh." Robinson then says, "Josh Stevens," and Watkins repeats the name. Robinson says, "But he stole off my property, bro." The women

repeat the identification of Stevens as the perpetrator later in the footage in response to additional questioning.

**{¶11}** About six and a half minutes into the footage, Dewitt arrives on the scene. Dewitt tells Patrolman Stolly that his attacker, who he just learned was named "Josh," pulled out a knife after Dewitt took the hammer from him and said that he had a gun too. Later in the footage, there is further discussion about the knife. A few minutes later, Robinson claims a knife was stolen from her porch.

**{¶12}** Stevens testified that he had one or two prior convictions for burglary and a prior conviction for breaking and entering. Stevens testified that he got out of prison on March 3, 2022, and was homeless around May 2, 2022. He testified that on May 2, 2022, about 11:30 a.m., he went to his cousin, Chris Gibson's, home to see if he could get some food. Stevens testified that Gibson is Robinson's "old man," and she is "supposed to be Chris's wife." Gibson said he could not give Stevens any food, so Stevens said, "That's fine." As Stevens "was getting ready to walk off the porch," he saw "this dude that was sitting here had a truck hood up and then Shawn Perkins and them was sitting there and just putting jumper cables on it [sic]." Stevens testified: "As soon as they put the jumper cables on it they told the dude to try it. It just clicked." Stevens knew they needed to "idle it up and boost the voltage" because he has "worked at Downtown Mall here in Lima," has worked at Ford, and is "a state certified mechanic." Stevens testified that he is "just a generous person," so he went over to where they were working and "hit the throttle

body in the truck." Shawn Perkins, who is Stevens's cousin, said, "Good looking out [sic]." Then Dewitt, who Stevens did not know, said, "Hey, that's somebody else's truck. Don't touch it." Stevens said, "All right; am I bad [sic]." Shawn Perkins said, "Don't worry about it. It's cool." Then Stevens walked off. Stevens testified that he did not see Dewitt again that day, that he did not hit him with a hammer, that he had never seen the hammer allegedly used to hit Dewitt before, and that he was not in the vicinity of the attack when it occurred. Stevens testified that he owned a bigger hammer which his brother, who he worked for as a "full-time handyman/fix it," had given him. Stevens also testified that Gibson gave him "[t]he black handled knife that they was [sic] talking about[.]" Stevens acknowledged that he has a crown tattoo above his left eye.

{¶13} The jury found Stevens guilty on both counts. The court found that the counts merged, and the state elected to proceed to sentencing on Count Two. Prior to the sentencing hearing, Stevens filed an objection to the imposition of an indefinite sentence under the Reagan Tokes Law, asserting that the law violates the separation-of-powers doctrine, the constitutional right to due process, and the constitutional right to a jury trial. The court overruled the objection, imposed an indefinite sentence of six to nine years under the Reagan Tokes Law, and ordered Stevens to pay court costs.

*Assignments of Error*

{¶14} Stevens presents six assignments of error:[1]

Assignment of Error I:  The trial court erred when it admitted the identifying statements in State's Exhibit 8 as excited utterances.

Assignment of Error II:  Trial counsel rendered ineffective assistance of counsel by failing to object to Officer Stolly's recitation of Elsie Robinson's identifying hearsay statement.

Assignment of Error III:  Trial counsel rendered ineffective assistance of counsel by failing to object to evidence concerning whether Mr. Stevens might have fled armed with a weapon.

Assignment of Error IV:  The multiple errors cumulatively deprived Mr. Stevens of his constitutional right to a fair trial.

Assignment of Error V:  The trial court erred when it sentenced Mr. Stevens to an indefinite sentence under the unconstitutional Reagan Tokes Act.

Assignment of Error VI:  Trial counsel rendered ineffective assistance by failing to request a waiver of court costs at sentencing.

*First Assignment of Error*

{¶15} In the first assignment of error, Stevens contends the trial court erred when it admitted the identifying statements of Robinson and Watkins in State's Exhibit 8, i.e., the body camera footage, as excited utterances.  Stevens asserts that "the overriding question is whether the stress of the event continued until the time of their statements to the degree that their reflective faculties were overridden."  He claims that "[t]he full context of the surrounding situation shows that their

---

[1] The assignments of error are taken from pages i-iv of Stevens's merit brief.  The second assignment of error is worded somewhat differently on page 13 of the brief.

statements were the product of reflection upon being questioned by police." He asserts that "[n]early a minute-and-a-half after Patrolman Stolly approached and began speaking with the women, he asked them to identify and describe the perpetrator of the assault, which prompted them to name" him. Stevens maintains that this questioning did not merely facilitate the women's expression of what was already the natural focus of their thoughts because the footage shows they "were initially focused on the theft of the hammer and the fact of the assault itself—not the identity of the perpetrator." He asserts that Robinson "was particularly agitated by the fact that someone came onto her property to steal a tool; she repeated her displeasure about this multiple times." He also asserts that at one point, Robinson "became distracted" and spoke to other bystanders about whether Dewitt wanted help. Stevens maintains that "besides a near-inaudible reference to 'Josh' or 'this boy Josh' in the first few seconds" of the footage, "the declarants said nothing about the identity of the alleged assailant until Patrolman Stolly asked them directly." Thus, he claims that Patrolman Stolly's "questioning did not merely facilitate the natural focus of their expression" but rather "redirected their focus, rendering their responses the product of reflective thought." Stevens asserts that the identifying statements were therefore not excited utterances, and "[t]he trial court abused its discretion when it held otherwise." He asserts this error was not harmless because the other evidence against him was not overwhelming.

Standard of Review

{¶16} "Generally, a trial court has broad discretion with respect to the admission of evidence." *State v. Delong*, 3d Dist. Marion No. 9-22-09, 2022-Ohio-4233, ¶ 6, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. "Accordingly, we will not disturb the trial court's evidentiary rulings absent an abuse of discretion that produces a material prejudice to the aggrieved party." *Id.* An abuse of discretion is "an unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶17} However, "a defendant's failure to raise an issue at trial forfeits all but plain error on review." *State v. Drain*, 170 Ohio St.3d 107, 2022-Ohio-3697, 209 N.E.3d 621, ¶ 51. To establish plain error, the defendant "must show that an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis deleted.) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

-13-

{¶18} In his merit brief, Stevens contends abuse-of-discretion review applies to his first assignment of error. In its appellee's brief, the state asserts that plain error review applies because at the trial level, defense counsel objected to the body camera footage on Confrontation Clause grounds, not hearsay grounds. In his reply brief, Stevens concedes that his trial counsel did not object to the body camera footage on hearsay grounds. However, he asserts that "the trial court, on its own, considered whether the statements were hearsay, and if so, whether an exception would apply." And he asserts that the court's reasoning for concluding the excited utterance exception applied "is on the record and can be reviewed by this court for an abuse of discretion."

{¶19} Stevens cites no legal authority in support of this position, and it is not well-taken. The fact that the trial court conducted its own hearsay analysis does not alter the fact that Stevens did not object at trial to the body camera footage on hearsay grounds or to the court's hearsay analysis. Because Stevens failed to raise the hearsay issue at trial, he has forfeited all but plain error review. *Drain* at ¶ 51. Stevens failed to develop a plain-error argument on appeal, and we will not fashion one for him. *State v. Flack*, 3d Dist. Union No. 14-22-24, 2023-Ohio-1705, ¶ 13. However, as we explain below, even if Stevens had argued plain error, his argument would fail because he has not demonstrated any error occurred.

Legal Principles

**{¶20}** " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is not admissible unless an exception applies. Evid.R. 802. Under Evid.R. 803(2), an excited utterance, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is "not excluded by the hearsay rule, even though the declarant is available as a witness[.]"

**{¶21}** A four-part test is applied to determine whether a statement is admissible as an excited utterance; the requirements for admissibility are:

> (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his [or her] reflective faculties and thereby make his [or her] statements and declarations the unreflective and sincere expression of his [or her] actual impressions and beliefs, and thus render his [or her] statement of declaration spontaneous and unreflective,
>
> (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his [or her] reflective faculties so that such domination continued to remain sufficient to make [the] statements and declarations the unreflective and sincere expression of his [or her] actual impressions and beliefs,
>
> (c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and
>
> (d) that the declarant had an opportunity to observe personally the matters asserted in [the] statement or declaration.

(Emphasis deleted.) *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955), paragraph two of the syllabus.

**{¶22}** "There is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance." *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). "The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may *not* be a result of reflective thought." (Emphasis sic.) *Id.* "Therefore the passage of time between the statement and the event is relevant but not dispositive * * *." *Id.* " '[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation.' " *Id.*, quoting *State v. Duncan*, 53 Ohio St.2d 215, 219-220, 373 N.E.2d 1234 (1978). In addition,

> admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties.

*Jones* at ¶ 170, quoting *State v. Wallace*, 37 Ohio St.3d 87, 524 N.E.2d 466 (1988), paragraph two of the syllabus.

Analysis

**{¶23}** Stevens's contention that the identifying statements were the product of reflective thought and thus not excited utterances is not well-taken. The evidence indicates that 5 to 15 minutes elapsed between the assault and the arrival of the police and that Robinson and Watkins initially identified Stevens as the perpetrator about 90 seconds after the police arrived. The fact that the women made the initial identifications after Patrolman Stolly inquired about the whereabouts, clothing, and race of the perpetrator did not preclude admission of those identifications as excited utterances. Patrolman Stolly's questions were not coercive or misleading. His simple and straightforward questions served to facilitate the women's expression of what was already the natural focus of their thoughts and did not destroy the domination of their nervous excitement over their reflective faculties. Before Patrolman Stolly asked these questions, the women were not just focused on the fact that a hammer was stolen and that Dewitt had been assaulted; they were also focused on the perpetrator of those acts. Prior to the initial identifications, Robinson mentioned the name "Josh" and talked about "the man" who had stolen her hammer, and Watkins talked about the perpetrator hitting Dewitt in the head with a hammer and taking off. And on the footage, both women seem upset and agitated and give prompt responses to Patrolman Stolly's questions. Given these circumstances, we reject the contention that Patrolman Stolly's questions redirected the focus of the women and rendered their identifying statements the product of reflective thought.

One could reasonably conclude that when the women made the initial identifying statements, their nervous excitement was still dominant over their reflective faculties such that their identifying statements were the unreflective and sincere expression of their actual impressions and beliefs. And because Stevens has not shown that the trial court erred, let alone committed plain error, when it admitted the identifying statements as excited utterances, we overrule the first assignment of error.

*Second Assignment of Error*

{¶24} In the second assignment of error, Stevens contends that trial counsel rendered ineffective assistance by failing to object to Patrolman Stolly's recitation of Robinson's identifying hearsay statement. Stevens asserts that even though trial counsel objected to the admission of the body camera footage, counsel failed to object when Patrolman Stolly testified about an identifying statement Robinson made in the footage. Therefore, he asserts that even if the footage had been excluded, "the jury still would have heard Ms. Robinson's unsworn statement without the benefit of cross-examination." He claims that "[t]here is no reasonable trial strategy in moving to exclude the out-of-court statements from the video, but not doing so when they were presented through a testifying witness." Thus, he asserts that we should find that trial counsel's failure to object to the testimony fell below an objective standard of reasonableness. He further asserts that the failure to object prejudiced him because the central disputed fact was the perpetrator's

-18-

identity, and there is a reasonable probability that Robinson's statement could have swayed the jury.

### Standard of Review

{¶25} "Upon direct appeal, appellate courts generally review claims of ineffective assistance of counsel on a de novo basis, simply because the issue originates at the appellate level; no trial court has ruled on the issue. Appellate courts review the trial record and are left to judge from the bare record whether the assistance was effective." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 53. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *Gondor* at ¶ 62. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95, citing *Strickland* at 687, and *Bradley* at 143. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. Failure to satisfy either part of the ineffective-assistance-of-counsel test is fatal to the claim. *See id.* at 697.

Analysis

{¶26} Stevens has not demonstrated that counsel's performance was deficient. Stevens seems to assume we will sustain his first assignment and conclude that a hearsay objection to Patrolman Stolly's testimony had a reasonable probability of success for the same reasons Stevens argues that the trial court erred in admitting the identifying statements in the body camera footage. However, in our analysis of the first assignment of error, we concluded that Stevens failed to show that the trial court erred when it admitted the identifying statements in the body camera footage as excited utterances. Consequently, a hearsay objection to Patrolman Stolly's testimony based on the same arguments presented in the first assignment of error would have been futile. " '[T]he failure to make a futile objection does not constitute deficient performance for an ineffective assistance of counsel claim.' " *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 89 (3d Dist.), quoting *State v. Corder*, 2012-Ohio-1995, 969 N.E.2d 787, ¶ 29 (4th Dist.). Accordingly, we conclude that Stevens failed in his burden to show that he received ineffective assistance of counsel and overrule the second assignment of error.

*Third Assignment of Error*

{¶27} In the third assignment of error, Stevens contends that trial counsel rendered ineffective assistance by failing to object to evidence concerning whether he might have fled armed with a weapon. Stevens maintains that "[e]vidence that the perpetrator was armed with a weapon that was not used in the attack does not satisfy even the low threshold for relevancy." He asserts that "whether the attacker might have been armed with an unrelated weapon *after* the incident is not probative of any element of felonious assault" and is not relevant to the identity of the attacker, which was a fact in dispute due to his testimony. He claims this evidence was "bare other-acts evidence that painted the attacker as a person with a propensity for violence." Stevens claims there was "no reasonable strategic basis" for trial counsel to not object to "this irrelevant and inflammatory evidence." Stevens also asserts that the failure to object prejudiced him because "the prosecution's case rested on the testimony of Mr. Dewitt and Mr. Joseph (and the hearsay statements) with no supporting forensic evidence or a confession," and "the other acts bolstered the prosecution's case by casting Mr. Stevens 'into the mold' of a violent person."

Standard of Review

{¶28} We set forth the standard of review for an ineffective-assistance-of-counsel claim in our discussion of the second assignment of error.

Legal Principles

**{¶29}** Evid.R. 404(B)(1) states: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Evid.R. 404(B)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Supreme Court of Ohio has set forth a three-part analysis for determining the admissibility of other-acts evidence:

> (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403.

*State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20, reconsideration granted on other grounds, 133 Ohio St.3d 1512, 2012-Ohio-6209, 979 N.E.2d 1290.

Analysis

**{¶30}** Stevens has not shown that trial counsel rendered ineffective assistance by failing to object to evidence concerning whether Stevens "might have fled armed with a weapon." Even if counsel had been deficient, Stevens has not demonstrated prejudice. Stevens appears to suggest that the state's proof that he

was the attacker was weak, so there is a reasonable probability that the jury determined he was the attacker because it thought he was a violent person based on evidence that he fled armed with a knife and gun. However, the jury would have had to find that Stevens was Dewitt's attacker before it could have found that Stevens fled from the attack armed with a knife and/or gun. Thus, we fail to see how evidence that Stevens might have fled armed with a weapon impacted the jury's verdict. Accordingly, we conclude that Stevens has not shown a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different, and we overrule the third assignment of error.

*Fourth Assignment of Error*

**{¶31}** In the fourth assignment of error, Stevens contends that multiple errors cumulatively deprived him of his constitutional right to a fair trial. " 'To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors.' " *State v. Grant*, 2023-Ohio-2720, ___ N.E.3d ___, ¶ 102 (3d Dist.), quoting *In re J.M.*, 3d Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36. Because we have not found multiple errors were committed at trial, the cumulative-error doctrine does not apply. Thus, we overrule the fourth assignment of error.

*Fifth Assignment of Error*

**{¶32}** In the fifth assignment of error, Stevens contends that the trial court erred when it sentenced him to an indefinite sentence under the "unconstitutional" Reagan Tokes Law. Stevens asserts that the law violates the separation-of-powers doctrine, the right to due process, and the right to a jury trial. However, after Stevens filed his appellate briefs, "the Supreme Court of Ohio addressed the constitutional validity of the Reagan Tokes Law and held that it does not intrude upon the separation-of-powers doctrine, does not implicate the offender's right to a jury trial, and does not violate the offender's due-process rights." *State v. Miller*, 3d Dist. Seneca No. 13-23-03, 2023-Ohio-3935, ¶ 41, citing *State v. Hacker*, ___ Ohio St.3d ___, 2023-Ohio-2535, ___ N.E.3d ___, ¶ 25, 28, 40. Based upon the Supreme Court of Ohio's determination of these issues, we overrule the fifth assignment of error.

*Sixth Assignment of Error*

**{¶33}** In the sixth assignment of error, Stevens contends trial counsel rendered ineffective assistance by failing to request a waiver of court costs at sentencing. Stevens asserts that it was unreasonable for trial counsel to not request a waiver because the record shows that he "was homeless earlier in the year 2022," that he was "indigent at the time of his trial," and that even though "he was a state-certified mechanic, he was not using that certification, instead working for his brother as [a] 'handyman/fix-it.' " Stevens maintains that "this is not a case where counsel made a strategic decision to forgo a request for waiver of costs to focus

instead on mitigation" because at sentencing, trial counsel "gave only a very brief statement concerning the absence of medical records cataloguing ongoing serious physical harm" to Dewitt "but otherwise made no statement 'to preserve appellate rights.' " And Stevens asserts that if counsel had requested a waiver, there is "a reasonable probability that the motion would have been granted."

### Standard of Review

{¶34} We set forth the standard of review for an ineffective-assistance-of-counsel claim in our discussion of the second assignment of error.

### Legal Principles

{¶35} "By statute, the imposition of court costs on all convicted defendants is mandatory." *State v. Taylor*, 161 Ohio St.3d 319, 2020-Ohio-3514, 163 N.E.3d 486, ¶ 6 ("*Taylor*"). R.C. 2947.23(A)(1)(a) states: "In all criminal cases, * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." However, R.C. 2947.23(C) states that "[t]he court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter."

{¶36} R.C. 2947.23(C) "provides no explicit criteria that a court should use in deciding whether to waive * * * costs." *Taylor* at ¶ 8. "[A] trial court is not required to consider the defendant's ability to pay in assessing a motion to waive * * * court costs under R.C. 2947.23(C), though it is permitted to do so." *Id.* at ¶ 16. " '[W]aiver of costs is permitted—but not required—if the defendant is indigent.' "

-25-

*Id.* at ¶ 7, quoting *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 14.

**{¶37}** With the adoption of R.C. 2947.23(C), " 'the timing of a motion to seek waiver of costs is a matter of trial strategy.' " *State v. Rister*, 4th Dist. Lawrence No. 21CA17, 2023-Ohio-1284, ¶ 22, quoting *State v. Phillips*, 4th Dist. Scioto No. 20CA3905, 2022-Ohio-478, ¶ 15, fn. 2. In assessing an ineffective assistance of counsel claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). " '[I]t is well-established that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available.' " *State v. Risner*, 3d Dist. Wyandot No. 16-20-05, 2021-Ohio-342, ¶ 28, quoting *State v. Artis*, 2019-Ohio-2070, 137 N.E.3d 587, ¶ 39 (3d Dist.). "[A]s a matter of trial strategy, counsel may decline to seek a waiver of costs at sentencing upon a belief that raising it at a later time would be more advantageous, or because counsel focuses priority on another issue such as mitigating punishment, or both." *Rister* at ¶ 27.

**{¶38}** Moreover, in the context of a claim that trial counsel rendered ineffective assistance by failing to request a waiver of costs at sentencing, "[a]n appellate court's reliance on the fact that a defendant may move for a waiver of costs at a later time under R.C. 2947.23(C) in its prejudice analysis is improper." *Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, at ¶ 14. "Whether the defendant may move for a waiver of court costs at a later time has little or no bearing on whether the trial court would have granted a motion to waive court costs at the time of sentencing." *Id.* "Furthermore, a determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel moved the court to do so * * *." *Id.* at ¶ 15. "[W]hen trial counsel fails to request that the trial court waive court costs on behalf of a defendant who has previously been found to be indigent, a determination of prejudice for purposes of an ineffective-assistance-of-counsel analysis depends upon whether the facts and circumstances presented by the defendant establish that there is a reasonable probability that the trial court would have granted the request to waive costs had one been made." *Id.* at ¶ 16.

Analysis

**{¶39}** Stevens has not demonstrated deficient performance because he has not overcome the presumption that under the circumstances, counsel's failure to move for a waiver of court costs at sentencing might be considered sound trial strategy. R.C. 2929.12(B) provides that if the victim suffered serious physical harm

as a result of the offense, the sentencing court shall consider that factor "as indicating the offender's conduct is more serious than conduct normally constituting the offense." During the sentencing hearing, in requesting "a lengthy prison sentence," the state suggested R.C. 2929.12(B) applied, arguing that "just looking at some of the sentencing factors, Ralph Dewitt did suffer serious physical harm. The jury did find as much on Count One even through [sic] the State elected to proceed on Count Two. He still has a scar on his head today. He has severe headaches he still deals with. He had a history of seizures before this event, but those have now gotten worse since this attack." In response, defense counsel stated: "Regarding the on-going serious physical harm, it's my understanding no medical records were introduced at trial and so we would ask the Court to not find that. Regarding anything else, in order to preserve appellate rights, we would make no statement. Other than that, we do intend to appeal. Thank you."[2] Although defense counsel's comments were brief, they indicate counsel focused priority on mitigating punishment.

{¶40} Even if counsel's failure to request a waiver of court costs at sentencing was deficient performance, Stevens failed in his burden to demonstrate prejudice. The facts and circumstances presented by Stevens do not establish a reasonable probability that the trial court would have granted a request to waive

---

[2] We note that Dewitt's emergency room medical records from the night of the attack were admitted at trial, but no additional medical records documenting on-going medical problems were admitted.

court costs had one been made. Stevens directs our attention to the fact that (1) he was indigent at the time of trial, (2) he was homeless earlier in 2022, and (3) he was a state-certified mechanic but working for his brother as a "handyman/fix-it." But again, "[a] determination of indigency alone does not rise to the level of creating a reasonable probability that the trial court would have waived costs had defense counsel moved the court to do so[.]" *Davis* at ¶ 15. And even though Stevens testified to being homeless earlier in 2022, he also testified that he was employed. Stevens suggests that he was underemployed because he was working as a "handyman/fix-it" instead of as a mechanic, but he does not direct our attention to any evidence that he was involuntarily underemployed or will not be employable upon his release. *See generally State v. Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, ¶ 80 ("if a court finds that a defendant has the ability to work and pay court costs in the future, the court may decide to not waive court costs").

{¶41} We observe that in its appellee's brief, after expressing uncertainty regarding whether Stevens has shown prejudice, the state asserts that if we are "inclined to do so," we "could look outside of [Stevens's] brief" and review certain documents, like the pre-sentence investigation report. The state asserts that if we "were to review all of these" documents, the state "concedes that it is possible" for us to find that there is a reasonable probability that the trial court would have granted a request for waiver of court costs had one been made. However, the state does not articulate what facts and circumstances in the specified documents would lead to

such a conclusion, and in any event, " ' "[i]t is the duty of the appellant, not this court, to demonstrate [the appellant's] assigned error through an argument that is supported by citations to legal authority and facts in the record." ' " *Marion v. Cendol*, 3d Dist. Marion No. 9-12-59, 2013-Ohio-3197, ¶ 8, quoting *State v. Linzy*, 5th Dist. Richland No. 2012-CA-33, 2013-Ohio-1129, ¶ 33, quoting *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 WL 61619, *3 (Feb. 9, 1999). *See* App.R. 16(A)(7) (appellant's brief "shall include * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). "If an argument exists that can support an assignment of error, it is not this Court's duty to root it out." *State v. Welling*, 3d Dist. Van Wert No. 15-23-05, 2023-Ohio-3214, ¶ 6. Therefore, we will not search the record for facts and circumstances not presented by Stevens which might support his ineffective assistance claim.

**{¶42}** For the foregoing reasons, we conclude that Stevens has not shown trial counsel rendered ineffective assistance by failing to request a waiver of court costs at sentencing and overrule the sixth assignment of error.

*Conclusion*

**{¶43}** Having overruled the assignments of error, we affirm the trial court's

judgment.

***Judgment Affirmed.***

**MILLER and ZIMMERMAN, J.J., concur.**

**\*\*Judge Michael D. Hess of the Fourth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**